BRIEF FOR APPELLEE

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

NO. 11-4129

_____

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN LEIGH SULLIVAN,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

BRIEF OF THE UNITED STATES

GEORGE E.B. HOLDING
United States Attorney

BY: JENNIFER P. MAY-PARKER
JOE EXUM, JR.
Assistant United States Attorneys
310 New Bern Avenue
Suite 800
Raleigh, North Carolina 27601
Telephone:  (919) 856-4530

Attorneys for Appellee

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF JURISDICTION.. . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUE. . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF CASE.. . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . 12

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 13

        THE DEFENDANT CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE
        OF COUNSEL AT ALL, LET ALONE CONCLUSIVELY FROM THE RECORD
        IN THIS CASE.. . . . . . . . . . . . . . . . . . . . 13

        A.   Standard of Review. . . . . . . . . . . . . . 13

        B.   Discussion of Issue.. . . . . . . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

### CASES

Fields v. Attorney General of Maryland, 956 F.2d 1290
    (4th Cir. 1992). . . . . . . . . . . . . . . . . . . 16, 17

Hill v. Lockhart, 474 U.S. 52 (1985). . . . . . . . . . . . 16

Hooper v. Garraghty, 845 F.2d 471
    (4th Cir. 1988). . . . . . . . . . . . . . . . 16, 17, 19

Lawrence v. Branker, 517 F.3d 700
    (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . 14

Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997). . . . . . . 14

Strickland v. Washington, 466 U.S. 668
    (1984) . . . . . . . . . . . . . . . . . . . 14, 17, 19

United States v. Baptiste, 596 F.3d 214 (4th Cir. 2010). . . . 13

United States v. Benton, 523 F.3d 424
    (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . 13

United States v. Martinez, 136 F.3d 972
    (4th Cir. 1988). . . . . . . . . . . . . . . . . 13, 19

### STATUTES

18 U.S.C. § 2251(a). . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2251(d). . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . 1

ii

<u>STATEMENT OF JURISDICTION</u>

The defendant appeals from a judgment of conviction following the entry of a guilty plea.  Jurisdiction to the district court was based on 18 U.S.C. § 3231.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291. The judgment in this case was entered on January 28, 2011, and the defendant filed a timely notice of appeal on February 1, 2011.

1

STATEMENT OF ISSUE

Whether the record in this case conclusively demonstrates that defense counsel did not provide effective assistance to the defendant.

## STATEMENT OF THE CASE

On October 14, 2009, a grand jury in the Eastern District of North Carolina returned an indictment charging the defendant with eleven counts of producing child sex abuse images in violation of 18 U.S.C. §§ 2251(a) and (d), and one count of possession of child sex abuse images in violation of 18 U.S.C. § 2252(a)(4)(B). (J.A. 15-18). On June 1, 2010, the defendant entered a plea of not guilty, and a jury was empaneled to hear his case on August 9, 2010 (J.A. 4, Docket Entry 23; J.A. 7, Docket Entries 49-51). On the second day of trial, the defendant, through counsel, changed his plea (J.A. 228-30), and pleaded guilty to all counts of the indictment (J.A. 243-44). On January 21, 2011, the district court sentenced the defendant to 340 months' imprisonment on Counts 1 through 11, and 120 months' imprisonment on Count 12, all to run concurrently. (J.A. 283).

The defendant filed a timely notice of appeal. (J.A. 294-95).

## STATEMENT OF FACTS

### Offense Conduct[1]

On June 22, 2009, Wake County Sheriff's Office Deputy H. Meyer was on his way home when he observed an occupied silver Toyota 4Runner that seemed out of place in a dead-end area of a Garner, North Carolina, subdivision that was still under development. (J.A. 88-89; J.A. 334, ¶ 4). At that time, there were no homes built, and the street was newly constructed and unmarked. (J.A. 88-89). Deputy Meyer approached the vehicle to investigate, and he saw an adult male, the defendant, kneeling in the back seat. (J.A. 93-96). When the defendant behaved nervously after being spotted, Deputy Meyer asked him to step out of the car, and the defendant complied. (J.A. 96-97). Deputy Meyer noticed that the defendant's pants zipper was about halfway down. (J.A. 97). Deputy Meyer also observed a child under the age of two sitting in a child seat in the back seat. (J.A. 96; J.A. 334, ¶ 4). Deputy Meyer opened the back door of the 4Runner to check on the safety of the child, who appeared to be okay. (J.A. 99). As he did this, Deputy Meyer noticed a digital camera in the 4Runner's back seat, at the bottom of the car seat. (J.A. 99). He picked up the camera and asked the defendant what was on it. (J.A. 100). The defendant claimed not to know, a lie that would quickly unravel. (J.A. 100).

---

[1] The offense conduct is drawn from both the trial transcript and the presentence investigation report.

4

Garner Police Officer Guy White arrived to support Deputy Meyer and asked the defendant what he was doing. (J.A. 101, 105-07). The defendant replied with more fabrications, claiming that he had just dropped his daughter off at a friend's house to play. (J.A. 107). The defendant, however, was curiously unable to give any specific location where his daughter was supposedly dropped off, explaining that he would know how to pick her up because "she would call [him]." (J.A. 108).

Officer White next asked the defendant about the camera found in the back seat. (J.A. 108-09). The defendant first claimed it was not his, and then changed his story, explaining that "I guess you could say it's mine." (J.A. 109). Officer White asked the defendant whether he could look at the camera. (J.A. 109). The defendant replied that "he did not know what was on there, but that [Officer White] could look at it." (J.A. 109).

Officer White picked the digital camera up off of the back seat and began to look at the photographs, and immediately recognized pornographic photographs that appeared to have been taken in the defendant's 4Runner. (J.A. 110-11). In general, the photographs depicted a 12 year old female child posed in sexually provocative positions, including close-up depictions of her vagina. (J.A. 110-11). The face of the child in the photos was covered

5

with some kind of black cloth.    (J.A. 110-12; J.A. 334, ¶ 5).
Officer White showed the pictures to the defendant, who feigned
surprise and claimed not to know who was in the pictures. (J.A.
110).

Officer White explained to the defendant that if the person in
the photographs was a consenting adult, there was no legal problem
with them.  (J.A. 115).  He further pointed out that the images had
clearly been taken in the back of the 4Runner in which the
defendant had been discovered.  (J.A. 115).  At this point, the
defendant revised his story yet again, claiming this time that he
was familiar with the pictures and that they were of an unnamed
woman he had met walking up a nearby street.  (J.A. 115).  Officer
White asked the defendant where this mystery woman might be found.
(J.A. 115).  The defendant replied that she was "at a clubhouse or
something."  (J.A. 115).  Further efforts to identify the woman
were fruitless, as she was, it would soon be determined, entirely
fictional.  (J.A. 115).

During the course of this conversation, Garner Police Officer
Petro Moore arrived and was briefed on the situation.  (J.A. 116-
17, 120).  He spoke with the defendant, who promptly gave a
different explanation for his presence at the location: this time,
he said that he was waiting to pick up his daughter from a pool
party at the clubhouse.  (J.A. 120).  Officer Moore checked on the
little boy in the car seat, and while doing so, Officer Moore

6

noticed a large lump under a tarp in the trunk area of the 4Runner. (J.A. 121). Officer Moore looked under the tarp and discovered a 12 year old child, the victim in this case, hiding under the tarp and trying to pull her dress down. (J.A. 121). Her dress was up to the mid-chest area of her body and she was not wearing any underwear. (J.A. 121). Needless to say, the defendant had not disclosed her presence in the car to anyone.

Officer Moore asked the defendant who the child was and what the child was doing under the tarp. (J. A. 122). The defendant replied that he didn't know who the child was; indeed, he claimed he did not know that anyone was in the back of the vehicle. (J.A. 122). After continued questioning by Officer Moore, the defendant claimed that the child was his daughter; however, it was later learned that she was the granddaughter of the defendant's then-girlfriend. (J.A. 122; J.A. 334, ¶ 4). It had become apparent to the officers that the defendant had been caught red-handed in the act of creating pornographic pictures of the young girl. (See J.A. 126, 298).

The defendant agreed to be transported to the police annex for further questioning, where he was interviewed by Garner Police Detective Gay. (J.A. 126, 138-39). A video of this interview was played for the Jury, and it revealed the following:[2] The defendant

_____

[2]    The following facts are drawn from the video, which was introduced into evidence at the defendant's trial and played for the jury.

7

confessed that he had taken the pictures found on the camera. He went on to describe the conversations that led to the incident, explaining that he had engaged in a kind of "grooming" conversation that required the victim to trust him. The "trust," he said, involved the victim trusting that he would delete the pictures from his laptop after he showed them to her.[3] The cloth he had used to cover the victim's face, he explained, was there "just in case" the photos didn't get deleted. The defendant further stated that he had been in the cul-de-sac with the child for about 20 minutes and had just finished photographing her when the police arrived.

## Trial Preparation

Well in advance of trial, defense counsel requested and was granted an opportunity to fully and completely review all of the digital evidence involved in the case, including all of the images that constituted the basis for the indictment. (J.A. 113, 207). Defense counsel conducted that examination and was told he was free to return if he had any further need to review the evidence.

In light of the fact that the defendant was caught in the midst of his criminal conduct, that the pictures were shown to have been taken during a brief window of time immediately before the defendant was arrested, that the defendant had been shown the pictures by one of the investigating officers at the time of the

---

[3] Because the defendant was caught during the commission of his crime, the pictures were never transferred from the camera to the laptop computer found on the scene.

arrest, that the defendant ultimately admitted to police that he had taken the pictures and that the pictures were of the victim, and that the defendant had provided much detail about the incident, the parties arrived at and signed a pretrial stipulation. (J.A. 5, Docket Entry 27). That stipulation included an acknowledgment that the defendant was the photographer and that the child identified as the victim in this case was the person in the photographs.

<u>Trial and Guilty Plea</u>

Notwithstanding defense counsel's advice that his best interests would be served by pleading guilty (J.A. 207), the defendant pleaded not guilty and proceeded to trial. (J.A. 4, Docket Entry 23). In his opening statement, defense counsel plainly acknowledged that the defendant was well aware of the content of the images, stating, "He took pictures, graphic pictures, pictures that may be disturbing to some of you of this 12 year old's vagina, her anus, close-ups. <u>These were not in dispute</u>." (J.A. 82) (emphasis added). The description of the defendant's mental awareness of the content of the photographs was stated in open court in the defendant's presence and was based upon defense counsel's review of the digital evidence recovered in the case, his communications with the defendant, and their trial strategy. (J.A. 82-85). There was, in other words, no confusion about the content of the images in the defendant's mind. The defense to be presented, it appeared, would be that the defendant was engaged in

9

some kind of misguided exercise designed to teach the victim to trust the defendant. (J.A. 83-85).

But as the trial proceeded, the defendant changed his story again and again. In the middle of the United States' presentation of the evidence, the defendant claimed that the digital evidence had been "altered and doctored." (J.A. 134). Later that day, the defendant switched positions, agreeing with his counsel that the original stipulations would stand and essentially repudiating his claim that the pictures were doctored. (J.A. 179). The next day, a new story developed: the defendant was willing to acknowledge having taken some of the photographs, but not all of them. (J.A. 198-99, 201-02). The defendant was, thus, willing to stand by his stipulation to some of the pictures, but not all of them. (J.A. 198-99, 201-02).[4]

The district court was not required to issue a final ruling on the defendant's partial request to withdraw his stipulation, because, after further presentation of evidence, the defendant decided to plead guilty. (J.A. 228-29). After specifically requiring the defendant to review each and every image at issue (J.A. 233-34, 239), and calling attention to the fact that his guilty plea would include pleas to the images he had sought to withdraw his stipulation on (J.A. 242), the defendant pleaded

---

[4] The defendant indicated that he would persist in agreement with the stipulations that pertain to the images at issue in counts 7-11. (J.A. 198-99, 201-02).

10

guilty to every count of the indictment.  (J.A. 243).  During the
change of plea colloquy, the defendant confirmed that he was, in
fact, guilty.  (J.A. 248).  The district court accepted the
defendant's pleas of guilty and released the jury.  (J.A. 257).

## SUMMARY OF ARGUMENT

The record in this case fails to conclusively demonstrate that the defendant was ineffectively assisted by his counsel. Indeed, the record demonstrates that the defendant was well-represented, had a clear understanding of the contents of the images, and proceeded to trial against the advice of his attorney. Defense counsel provided assistance that meets an objective standard of reasonableness, and nothing in the defendant's appeal overcomes the presumption that his counsel's conduct was within the wide range of reasonable professional assistance.

Moreover, the defendant had a firm understanding of what was contained in the pornographic photographs he took of the victim, as indicated by the facts that: he was caught moments after taking the pictures, he reviewed the pictures with at least one policeman, and his counsel provided an accurate description of the images during opening statements. Defense counsel had ample opportunity to review these images during trial preparations, and he discussed them with the defendant. Defense counsel committed no unprofessional error at all, and even had he done so, there is no reasonable probability that the result of the proceedings would have been different.

ARGUMENT

THE DEFENDANT CANNOT DEMONSTRATE INEFFECTIVE ASSISTANCE OF COUNSEL
AT ALL, LET ALONE CONCLUSIVELY FROM THE RECORD IN THIS CASE.

A.    Standard of Review.

A claim of ineffective affective assistance of counsel can be
asserted on direct appeal "if and only if it conclusively appears
from the record that his counsel did not provide effective
assistance," United States v. Martinez, 136 F.3d 972, 979-80 (4th
Cir. 1988); accord United States v. Baptiste, 596 F.3d 214, 216 n.1
(4th Cir. 2010); United States v. Benton, 523 F.3d 424 (4th Cir.
2008).

B.    Discussion of Issue.

Despite having been caught in the act of taking pornographic
pictures of a 12 year old child, having reviewed those images with
a police officer on the scene, and having heard his attorney's
accurate description of those pictures and his awareness of their
content, the defendant argues that he did not know what it was that
he had photographed.  (Brief at 9, 13).  The defendant now claims
that although defense counsel viewed the photos, discussed them
with the defendant during trial preparations, and urged the
defendant to plead guilty, he had forgotten the contents of the
photographs.  He argues that had defense counsel created an
opportunity for him to personally review the images prior to trial,
he would have pleaded guilty in a timely manner and, as a result,
received credit under the guidelines for acceptance of

13

responsibility. (Brief at 9). This, the defendant asserts, is a conclusive demonstration of ineffective assistance of counsel. (Brief at 9).

To state this argument is to refute it. To succeed on a claim of ineffective assistance of counsel, "the defendant must show that his counsel's performance 'fell below an objective standard of reasonableness' in light of the prevailing professional norms." Lawrence v. Branker, 517 F.3d 700, 708 (4th Cir. 2008) (quoting Strickland v. Washington, 466 U.S. 668, 669 (1984)). If the defendant can establish deficient performance on the part of his attorney, he must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. This defendant can do neither.

There is a strong presumption that defense counsel's conduct was within the wide range of reasonable professional assistance. Strickland 466 U.S. at 689; accord Matthews v. Evatt, 105 F.3d 907, 919 (4th Cir. 1997). Nothing in this case is sufficient to rebut that presumption. Indeed, defense counsel's conduct was entirely reasonable. He reviewed the evidence, including the images that served as the basis for the indictment, the date and time stamp information associated with the pictures, the circumstances of the defendant's arrest immediately after having taken the pictures, the fact that the pictures were shown to the defendant at the scene,

14

and the defendant's detailed confession to the crime.  Based upon this information, defense counsel concluded that little purpose would be served by re-presenting the images to the defendant. (J.A. 207).  Indeed, the defendant himself saw no such need: he, along with his lawyer, signed a written stipulation that he took the pictures and that the victim was the child depicted in them. (J.A. 5, Docket Entry 27).  Although the record does not reflect the detailed nature of defense counsel's conversations with his client about the content of the pictures during trial preparation, the description he gave in his opening statement makes clear that there was no misunderstanding about the content of the relevant images.  (J.A. 82-85).  In sum, defense counsel's judgment that a further review of the images by his client was unnecessary was not only reasonable, but a matter of common sense.[5]

Moreover, even if it is assumed _arguendo_ that defense counsel's commonsense decision were unreasonable, the defendant cannot show a reasonable probability that, but for that decision,

---

[5]    The defendant's Brief seeks to make much out of defense counsel's statement that deciding not to re-present the defendant with his photographs "may have been an error on [his] part" and that he "accepted responsibility for this."  (Brief at 10) (citing J.A. 207).    This does not constitute an acknowledgment of ineffective assistance.  In the very same breath, defense counsel explained, quite reasonably, "I did not think it was necessary to try to create the scenario where we somehow provided him access to these images because this issue was not even on my radar as to whether he was going to try to deny that he took these pictures." (J.A. 207).    In light of the overwhelming evidence that the defendant did take the pictures and knew what was in them, the judgment defense counsel described here is entirely reasonable.

the result of the proceedings would have been different.  The
defendant bears the burden of establishing prejudice, and if he
cannot do so, "a reviewing court need not consider the performance
prong."  Fields v. Attorney General of Maryland, 956 F.2d 1290,
1297 (4th Cir. 1992).  The defendant cannot sustain this burden,
either legally or factually.

The defendant meets an insuperable legal obstacle by virtue of
the fact that he ultimately pleaded guilty to all counts of the
indictment.  It is well-established that a defendant making a claim
of ineffective assistance of counsel in the wake of a guilty plea
bears a higher burden than one who is found guilty after trial:

> When a defendant challenges a conviction entered after a
> guilty plea, [the] 'prejudice' prong of the [Strickland]
> test is slightly modified.  Such a defendant 'must show
> that there is a reasonable probability that, but for
> counsel's errors, he would not have pleaded guilty and
> would have insisted on going to trial.

Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (emphasis
added) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985).  The
defendant cannot make this showing.  His claim is not that he would
have gone to trial but for his attorney's alleged error, but that
he would have pled guilty earlier in the process and therefore
received credit for acceptance of responsibility under the
guidelines.  This claim fails the test set out in Hill and Hooper.
Like the defendant in Fields, "the crux of [the defendant's] case
is that with effective assistance he would have pled to a different
plea bargain and received a more favorable sentence.  Manifestly,

16

therefore [the defendant] cannot make the showing of prejudice required under Hooper and Strickland." Fields, 956 F.2d at 1297.[6] This reasoning squarely applies here and compels denial of the defendant's appeal.

Even if this legal roadblock were removed, however, the defendant's factual argument would fare little better. The defendant suggests that he admitted guilt promptly after seeing the pictures during the trial of his case. (Brief at 9, 11). This is simply not so. Putting aside the fact that the content of the pictures is precisely as his lawyer described them in his opening statement (J.A. 82), the defendant's mid-trial conduct was not a prompt acceptance of responsibility triggered by any newfound knowledge of the pictures he took. Rather, the defendant engaged in yet another series of poorly conceived attempts to conceal his crimes—a continuation of the strategy he used from the moment he was caught—as a result the newfound perception generated during trial that he was likely to be found guilty.[7]

---

[6] Fields noted that even in this situation, there are a few exceptional circumstances under which Strickland prejudice is assumed, Fields, 956 F.2d at 1298, but none of those circumstances apply in this case.

[7] The defendant claims that "the Government did not proffer a counter explanation to the court for [the defendant's] unexpected reaction to his first opportunity to examine the prints." (Brief at 18). This is not so. The United States explained it in essentially the same way it is explained here: "What's going on here, your Honor, is that [the defendant] doesn't like the way this trial is going and he is trying to change the course of the trial" (J.A. 205), and later, "The truth of the matter, your Honor, is the
(continued...)

17

The defendant's first maneuver after trial commenced and the pictures were presented was not to plead guilty, but to claim that the pictures "[couldn't] be of the victim." (J.A. 113). At the next opportunity to discuss the matter, he began to claim that "[the pictures] have been altered and doctored and that they are not, in fact, pictures from the interior of the sports utility vehicle." (J.A. 134). Then, as the day proceeded further, the defendant reversed field again, agreeing through counsel that he would stick with his original stipulation (J.A. 179), implicitly withdrawing his claims of earlier in the day. The next day, the defendant had a new concoction: this time, he claimed, the stipulation was true with respect to some of the charged images, but not others. (J.A. 201). There was still no guilty plea. That did not come until the completion of testimony by two additional witnesses and a recess, when the presentation of the United States' evidence was all but complete. Then, and only then, did the defendant decide that pleading guilty was in his best interest. (J.A. 229). His conduct at trial renders hollow his claim that he would have pleaded guilty long before trial had he been given another opportunity to review the images he took, and makes implausible any argument that had his lawyer behaved differently, it is reasonably probable that the outcome of the case

_____

[7](...continued)
defendant knows perfectly well what's on the images." (J.A. 206) (see also J.A. 204-06).

18

would have been different. To the contrary, the defendant's conduct demonstrates that it is exceedingly unlikely.[8]

The conduct of defense counsel in this case was entirely reasonable, and well within the "wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, and even if it were not, the defendant could not, as a matter of law, demonstrate the prejudice required by Hooper, 845 F.2d at 475-76, in light of his guilty plea. Factually, there is not now, nor has there ever been, any reason to take seriously the idea that the defendant was unfamiliar with what was in the pictures he took. (It is noteworthy in this regard that this is not the first time the defendant has told this tale: he made the same false claim of ignorance at the time he was caught by police (J.A. 100), only later to make clear that he well knew what was on the camera).

Even if it were true, however, it is clear from the defendant's conduct after seeing the images again at trial that it would have made no difference. He approached his trial the same way he approached his case from the beginning: by telling one

---

[8] In an effort to rescue himself from the overwhelming evidence that he was familiar with the contents of photographs he took, the defendant references a journal article about repressed memory and a reference in the DSM-IV to the existence of a phenomenon known as "localized amnesia." (Brief at 17-18). This issue need not be responded to at any length because (a) its application to the case at hand is, at best, highly speculative; and (b) it relies entirely on matters outside the record in this case. As made clear above, having made his case on direct appeal, the defendant can only succeed if ineffective assistance of counsel can be shown conclusively based upon the record . . . not outside sources. Martinez, 136 F.3d 972, 979-80 (4th Cir. 1988).

implausible story after another, until the evidence was in and there were no more stories left that even the defendant believed might save him. Undeterred, he now seeks to recycle one of his earliest prevarications–that he didn't know what was in pictures he took–in the form of an appellate argument. This Court should decline to participate in the defendant's most recent flight of fancy and deny his appeal.

<u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully submits that the defendant's appeal should be denied.

Respectfully submitted, this 5th day of July, 2011.

GEORGE E.B. HOLDING
United States Attorney

BY: <u>/s/ Joe Exum, Jr.</u>
Joe Exum, Jr.
Assistant United States Attorney
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, North Carolina  27601-1461
Telephone: 919-856-4530

JENNIFER P. MAY-PARKER
Assistant United States Attorney
Of Counsel

20

**CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS**

**TO BE INCLUDED IMMEDIATELY BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT**

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

_____    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT Sans Serif typeface such as Arial). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

_____

__X__    Twelve point, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, Courier New, 12 point):

Corel WordPerfect X4, Courier New, 12 point.

_____

2.    EXCLUSIVE of the corporate disclosure statement, table of contents, table of citations, state with respect to oral argument, any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

__X__   __20__    Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

_____   _____    Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

_____   _____    Lines of Monospaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

_/s/ Joe Exum, Jr._____
                                    Signature of Filing Party

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

    Marilyn G. Ozer
    Massengale & Ozer
    211 North Columbia Street
    Chapel Hill, North Carolina 27514


    /s/ Joe Exum, Jr.
    JOE EXUM, JR.
    Assistant United States Attorney