RECORD NO. 11-4129

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JONATHAN LEIGH SULLIVAN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT NEW BERN

**REPLY BRIEF OF APPELLANT
JONATHAN LEIGH SULLIVAN**

Marilyn G. Ozer
MASSENGALE & OZER
211 North Columbia Street
Chapel Hill, North Carolina 27514
(919) 967-8555
redwood@nc.rr.com

*Counsel for Appellant*                                July 8, 2011

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT .......................................................................................................... 1

1. *Hill v. Lockhart* Is Not On Point As Mr. Sullivan Is Not Challenging The Voluntariness Of His Plea ............................................. 1

2. The Government's Brief Alleges Facts Not Based On Testimony In The Record ....................................................................... 3

   a. Defense Counsel Did Not Make A Strategic Decision To Fail To Request An Opportunity For His Client To View The Photos ................................................................................. 3

   b. The Defendant And His Attorney Repeatedly Told The Court That He Was Confused About The Content Of The Images ................................................................................... 4

CONCLUSION ...................................................................................................... 7

# TABLE OF AUTHORITIES

*Cases*

*Hill v. Lockhart*, 474 U.S. 52 (1985) ........................................................ 1, 2, 3

*McMann v. Richardson*, 397 U.S. 759 (1970) ..................................................... 1

*Padilla v. Kentucky*, __ U.S. ___, 130 S.C.t. 1473 (2010) ............................. 2, 3

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000) ....................................................... 2

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................. 3

*Constitutional Provisions*

U.S. Const. Amend. VI ................................................................................. 8

Jonathan Leigh Sullivan presents this reply to the Government's brief filed on July 5, 2011.

## ARGUMENT

Jonathan Sullivan contends that his attorney provided ineffective assistance of counsel by not seeking an opportunity for Mr. Sullivan to see the images which formed the basis of his indictment before trial.

1. *Hill v. Lockhart* Is Not On Point As Mr. Sullivan Is Not Challenging The Voluntariness Of His Plea

The Government maintains that the standard of prejudice applicable to a case in which the defendant has gone to trial, but changes his plea during the Government's evidence is set forth in *Hill v. Lockhart*, 474 U.S. 52 (1985). (Government's Brief p. 16) This is incorrect. The basis of the appeal in *Hill* was an unknowing and, thus, involuntary plea: "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill* at 57, quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (*emphasis added*). The "attack" in *Hill* was upon "the voluntary and intelligent character of the guilty plea." *Id*. *Hill* is inapposite to the instant case, as the

1

question is whether Jonathan Sullivan's decision to go to trial was based on whether he was given an opportunity to review all of the available evidence necessary to make his decision whether to go to trial. Mr. Sullivan is not claiming his guilty plea was involuntary or unknowing. To obtain relief under the *Hill* standard, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, __ U.S. ___, 130 S.C.t. 1473, 1485 (2010), citing to *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000). An irrational acceptance of a plea bargain is not at issue in this case.

　　The Supreme Court's goal in fashioning the prejudice standard in *Hill* was to prevent a flood of appeals, based on the attorney's failure to warn the defendant of adverse consequences of the plea, after a guilty plea had been entered before trial: "We have given serious consideration to the concerns that the Solicitor General, respondent, and *amici* have stressed regarding the importance of protecting the finality of convictions obtained through guilty pleas. We confronted a similar "floodgates" concern in *Hill*." *Padilla* at 1484. The Supreme Court in *Padilla* instructs that not all ineffective assistance claims stemming from guilty plea questions are controlled by *Hill*, including the

specific question presented in *Padilla*.[1] Instead, *Hill* stands for the general principle that a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984) is applicable to cases resolved by entry of plea. *Padilla* at 1485, f.n. 12.

2. <u>The Government's Brief Alleges Facts Not Based On Testimony In The Record</u>
    a. <u>Defense Counsel Did Not Make A Strategic Decision To Fail To Request An Opportunity For His Client To View The Photos</u>

The Government's Brief alleges that "defense counsel concluded that little purpose would be served by re-presenting the images to the defendant." (Government's Brief at p. 15) The Brief concludes: "In sum, defense counsel's judgment that a further review of the images by his client was unnecessary was not only reasonable, but a matter of common sense." (Government's Brief at p. 15) Any assertion that defense counsel had made a decision to not ask for an opportunity for his client to view the images is contradicted by counsel's on the record statements to the Court. In fact, defense counsel told the Court the

---

[1] The opinion notes: "It is true that *Hill* does not control the question before us." *Padilla* at 1485, f.n. 12.

3

opposite—he had given no thought at all to having Mr. Sullivan view the photos:

> Mr. Willis:  I would say for the record, I strongly urged my client, based on the images I saw, to accept the government's plea offer. And this may have been an error on my part. I accept responsibility for this. But I did not think it was necessary to create the scenario where we somehow provided him access to these images, because <u>this issue was not even on my radar</u> as to whether he was going to try to deny that he took these pictures. So, I accept responsibility for that.

(J.A. p. 207) (*emphasis added*). There is simply no record support for the Government's assertion that Mr. Willis had made an affirmative decision not to show the images to Mr. Sullivan before his arraignment.

      b. <u>The Defendant And His Attorney Repeatedly Told The Court That He Was Confused About The Content Of The Images</u>

The Government's Brief also states in its summary of the facts that there was "no confusion about the content of the images in the defendant's mind." (Government Brief, p. 9, Statement of Facts, Section "Trial and Guilty Plea") While this may be the Government's interpretation of the trial as a whole, it is not what was said by either the defendant or his attorney. Instead, all of the record testimony is that Mr. Sullivan's memory of the images was inaccurate. Defense counsel explained to the court that Mr. Sullivan had not been given an opportunity prior to trial to view the photographs:

4

> MR. WILLIS: No. We've stipulated that these are the pictures from the camera. It's my client's first opportunity to see these pictures. He's claiming this can't be of the victim. I have no objection.
>
> I mean, I had an opportunity to review these pictures with Special Agent Hicks. I don't think there's any doubt they're from this camera. But I'm just concerned about my client's reaction to this and if it needs to be on the record. I'm not sure what to do.

(J.A. p. 113)

> MR. WILLIS: Given—given the nature of the photographs and the fact that my client did not see them until yesterday, we would submit that this is an issue of surprise in that he's adamant that the photographs that are now not stipulated to are not the photographs he took; that they must have been taken by someone else or tampered with in some fashion.

(J.A. p. 204)

The trial court engaged Mr. Sullivan in a lengthy colloquy before accepting his change of plea. (J.A. pp. 230-255) In his answers to the court's questions, Mr. Sullivan repeatedly stated his memory of what was on the photographs was inaccurate:

> THE COURT: Well, as you have heard, the government took the position, under federal law, that it could not disclose or publish the images. You have had an opportunity to look at them, have you not?
>
> THE DEFENDANT: No, I have not. This is the first time I have. I've asked questions about them before, but I assumed that they were all okay. I never—I thought I knew exactly

5

> what was on the pictures. I thought I knew exactly what was on them.
>
> And from the beginning to now and when they were making comments, I could see why they were making the comments and all that kind of stuff. I had no idea—I don't remember her ever touching herself. I don't remember her ever doing any of that, except to say she did, until I actually go the pictures.
>
> That's why, at first, I was confused. But then, once I actually saw the scene, that the evidence inside the pictures was proving otherwise. I guess my mind just lost it. Because I've contended from the beginning that she's never touched herself; that she was laying in a certain position the whole time—two positions the whole time, and that's it.
>
> And when I got the evidence, it showed something totally different. And it totally—I don't know. I just --

(J.A. pp. 232-233) When asked if he were pleading guilty because he committed the crimes, Mr. Sullivan repeated that while he had no independent memory of committing the crimes, the printed images told a different story:

> THE DEFENDANT: I'm pleading guilty because, as far as I can tell, I can't—I can't deal with the evidence. The evidence basically is telling me—I didn't look at the pictures. I didn't see the pictures. I don't know what I took pictures of. I don't remember any of the activities that are going on that the pictures say that happened. But as far as I can tell, the evidence is telling me that I'm guilty. And that's the only reason why I have no choice but to plead guilty, even though I have no memory or recollection of those pictures.

(J.A. pp. 246-247)

6

> THE DEFENDANT: I do not feel I was sexually trying to do anything. I don't believe that there was enough sex, yet the pictures clearly stated that that's truly what was going on.
>
> I mean, I don't know how you defend against it. I don't know what I can tell the jury that can actually go against anything the pictures speak for.

(J.A. pp. 247-248) The allegation in the Government's brief that there was no confusion about the content of the images is utterly contradicted by the evidence. Trial testimony consistently shows that Mr. Sullivan's memory of the images was inaccurate, that he was surprised by what he saw in the printed images and that as a result of having his faulty memory corrected by viewing the printed images he changed his plea to guilty.

## CONCLUSION

The Government's concluding words, belittling Mr. Sullivan's appeal as a "flight of fancy" reflects the prosecutor's personal opinion, not the evidence before this Court and the trial court. Mr. Sullivan was manifestly upset by the images as soon he was allowed to view the full size printed images in the Government's notebook. Prior to trial he had only viewed the images through the small viewfinder of a digital camera. At trial, his counsel admitted he had never thought of asking for an opportunity for Mr. Sullivan to view the prints of the images. Defense counsel accepted responsibility for his error on the record.

7

The Government does not dispute that if Mr. Sullivan had pleaded guilty at his arraignment he would have been entitled to a three level reduction under the guidelines. Trial counsel has admitted ineffective assistance of counsel. Mr. Sullivan has shown prejudice. He respectfully requests this Court vacate his conviction and sentence based on ineffective assistance of counsel under the Sixth Amendment to the United States Constitution.

Respectfully submitted, this the 8th day of July 2011.

/s/ Marilyn G. Ozer
N.C. Bar # 18360
Attorney for Jonathan Sullivan
Massengale & Ozer
211 North Columbia Street
Chapel Hill, NC 27514
(919) 967-8555
redwood@nc.rr.com

8

# CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>8 pages</u>, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Time New Roman, 14 point font</u>.

<u>/s/ Marilyn G. Ozer</u>
Marilyn G. Ozer

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2011, the foregoing Reply Brief of Appellant was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the CM/ECF system, which will send notification of such filing to:

Jennifer P. May-Parker
Office Of The United State Attorney
Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC 27601-1461

(919) 856-4530

I hereby certify that on July 8, 2011, a copy of the foregoing Reply Brief of Appellant was served via U.S. Mail, First Class, postage paid to Counsel for Appellee at the address listed above.

   /s/*May Serafim*
May Serafim
Lantagne Legal Printing
801 East Main Street, Suite 100
Richmond, Virginia, 23219